### UNITED STATES of America

v.

### Gary Lee SAMPSON

### No. CR. 01–10384–MLW.

United States District Court, D. Massachusetts.

Jan. 29, 2004.

---

Frank M. Gaziano, George W. Vien, John A. Wortmann, Jr., United States Attorney's Office, Boston, MA, for U.S.A.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

■ The court is entering the attached Judgment and Order which, pursuant to the jury's verdicts and 18 U.S.C. §§ 3591–3597, requires that defendant Gary Sampson be executed for the carjacking resulting in the death of Philip McCloskey and the carjacking resulting in the death of Jonathan Rizzo. Pursuant to 18 U.S.C.

§ 3596(a), the court has designated New Hampshire as the state in which Sampson shall be executed. Therefore, Sampson shall be executed in New Hampshire in the manner prescribed by the law of New Hampshire—by lethal injection or, if that is impractical, by hanging. *See* 18 U.S.C. § 3596(a); N.H.Rev.Stat. § 630.5 XIII, XIV.

The government requested that the court order that Sampson be executed at the Federal Penitentiary in Terre Haute, Indiana where the Department of Justice has established a federal "death row." While the court has seriously considered the preference and convenience of the government, it has decided that there are compelling considerations that make New Hampshire the more appropriate venue for Sampson's execution. The Attorney General may, however, imprison Sampson in Indiana or elsewhere until Sampson is released to the United States Marshal who will be responsible for his execution in New Hampshire.

As explained below, there are essentially two important reasons that the court has selected New Hampshire, rather than Indiana, as the site for Sampson's execution. First, requiring that Sampson be executed in New Hampshire will, to the maximum extent possible, consolidate all litigation concerning his case in the First Circuit and thus serve the interests of justice. Second, the execution of a human being by the state is perhaps the most solemn and significant act a government can perform. It should not be reduced to an invisible, bureaucratic function. There is, therefore, a strong public interest in Sampson's execution being as accessible as possible to the people most interested in it and impacted by it. Sampson's execution in New Hampshire will serve that public interest.

█ It is clear that the court has the authority to designate the state in which Sampson will be executed. 18 U.S.C. § 3596(a) states that:

A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. *If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.*

(Emphasis added). Therefore, the express terms of the statute unambiguously provide that where, as here, the law of the state in which a federal death sentence has been imposed does not authorize death as a penalty for any crime, the court has the authority and responsibility to designate another state, whose law does include the death penalty, as the place for the defendant's execution.

18 U.S.C. § 3597(a) provides that:

A United States marshal charged with supervising the implementation of a sentence of death may use appropriate State or local facilities for the purpose, may use the services of an appropriate State or local official or of a person such an official employs for the purpose, and shall pay the costs thereof in an amount approved by the Attorney General.

Thus, the Federal Death Penalty Act expressly contemplates that a federal death

sentence may be implemented in a state that does not have a federal prison by authorizing the use of state or local facilities. The Marshal may also use his or her own personnel, hire a local executioner and others, or utilize personnel specially employed by state or local officials.

Sampson intends to appeal the verdicts that have resulted in his death sentences in this case. The First Circuit will decide his appeal. New Hampshire is in the First Circuit. Indiana is in the Seventh Circuit.

If Sampson's death sentences are affirmed on appeal, it is foreseeable there will be additional litigation. Sampson may file a petition in this court, under 28 U.S.C. § 2255, challenging the legality of the sentence. *See* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(a) ("The original motion shall be presented promptly to the judge of the district court who presided at the movant's trial and sentenced him."); *United States v. Barrett*, 178 F.3d 34, 50 n. 10 (1st Cir.1999) ("[A] § 2255 petition ... must be brought in the sentencing court."). Sampson may also seek certain relief concerning the conditions of his confinement or other issues pursuant to 28 U.S.C. § 2241 in the jurisdiction in which he is confined prior to the date of his execution. *See Barrett*, 178 F.3d at 50 n. 10 ("[A] § 2241 petition is properly brought in the district court with jurisdiction over the prisoner's custodian."); *United States v. Hammer*, 121 F.Supp.2d 794, 800 (M.D.Pa. 2000). In addition, third parties may institute litigation relating to Sampson's execution. *See, e.g., Entertainment Network, Inc. v. Lappin*, 134 F.Supp.2d 1002 (S.D.Ind.2001) (internet company seeks to broadcast the execution of Timothy McVeigh).

It will serve the interests of justice if, to the maximum extent possible, all litigation relating to Sampson is initiated in District Courts whose decisions will be appealed to the First Circuit. The First Circuit will be fully familiar with Sampson's case and, therefore, able to address any appeals in an informed and efficient manner. The litigation of foreseeable issues concerning Sampson's execution will also provide it with the opportunity to develop and apply the law relating to federal capital cases involving crimes committed within its jurisdiction in the way that it deems to be proper, which may differ from the way other Circuits interpret and apply the same law.

Massachusetts, where the crimes and trial that generated Sampson's death sentences occurred, is the state that has the strongest interest in this case, including in the punishment to be imposed on Sampson for those crimes. However, the law of Massachusetts does not provide the death penalty for any offense and, therefore, federal law prohibits Sampson's execution in Massachusetts. *See* 18 U.S.C. § 3596(a).

Of all other states, New Hampshire has a uniquely strong interest in the punishment imposed on Sampson. Sampson has admitted that, after murdering Philip McCloskey and Jonathan Rizzo in Massachusetts, he murdered Robert Whitney in New Hampshire. The murder of Robert Whitney was an aggravating factor that contributed to the verdicts resulting in the death sentences imposed in this case. Sampson has also been charged in New Hampshire for committing that crime. *See* Jan. 26, 2004 Tr. at 88. The execution of Sampson in New Hampshire will both moot that state's case against him and vindicate its interest in his being punished for murdering Robert Whitney.

New Hampshire also borders Massachusetts. Sampson now has two lawyers from Massachusetts. It is likely that at least some of his post-conviction attorneys will reside in Massachusetts. They will foreseeably need to communicate with Samp-

son as the date of his execution approaches and final legal challenges are made. Designating New Hampshire, rather than Indiana, as the state for Sampson's execution should facilitate his attorneys' representation of him.

The government proposes that three of Sampson's adult friends or relatives be allowed to attend his execution. Sampson's mother lives in New Hampshire. The sole witness who testified about the adverse impact that Sampson's execution would have on her was one of his former wives, Karen Alexander, who lives in New Hampshire. Karen Alexander is the mother of Sampson's autistic child. It is doubtful that she would be able to travel to Indiana for Sampson's execution. Thus, requiring that Sampson be executed in New Hampshire rather than Indiana should make it possible for his relatives or others to be present if they choose to attend.

New Hampshire should also be a more convenient venue for the families and friends of Philip McCloskey and Jonathan Rizzo. Large numbers of them regularly attended Sampson's trial. Many of them may wish to be present for his execution, or at least be in the vicinity to provide emotional support for those who do attend. It would probably be difficult for many of them to travel to Indiana, particularly if last minute stays, which often cause the postponement of scheduled executions, require more than one trip.

New Hampshire would also be a more convenient site for the Massachusetts media, which has intensely covered the Sampson case. The verdicts that resulted in the death sentences in this case were front-page news in each of the Boston newspapers. *See* Shelley Murphy, "Death for Sampson Verdict Makes Him State's First Since 1947 to Face Execution," *The Boston Globe,* Dec. 24, 2003, at A1; J.M. Lawrence, "Sampson to be Executed," *Boston Herald,* Dec. 24, 2003, at 1. There is a public interest in facilitating the Massachusetts media's ability to report on this case. Requiring that Sampson be executed in New Hampshire rather than in Indiana should serve that interest.

As reflected in the government's proposed Judgment and Order, the Deputy Attorney General may decide that it is necessary that Department of Justice attorneys attend the execution. *See* 28 C.F.R. § 26.4(c)(2). Each of the prosecutors in this case lives in Massachusetts. New Hampshire should be more convenient for them too if they are required to attend Sampson's execution.

The court understands that it would be more convenient for the government to execute Sampson in Indiana. However, 18 U.S.C. § 3596(a) provides, in essence, that a court may consider more than the convenience of the government in designating a site for an execution where, as here, the law of the state in which a death sentence was imposed does not provide for capital punishment.

The Department of Justice has at least twice attempted to have 18 U.S.C. § 3596(a) amended to provide for a uniform system for implementing federal death penalties in federal institutions, and to allow the Attorney General to select the place and manner of such executions. *See Hammer,* 121 F.Supp.2d at 797–800. Each of these efforts was opposed and failed. *Id.* These unsuccessful efforts indicate that Congress has not been persuaded that the convenience of the government in having all federal executions occur at a single location inevitably outweighs the possible countervailing considerations in a particular case.

In any event, convenience is not the paramount concern of the Federal Death Penalty Act and related Supreme Court jurisprudence. For example, the

statute mandated that Sampson be appointed counsel experienced in capital cases. *See* 18 U.S.C. § 3005. Because Massachusetts law does not provide for capital punishment, Massachusetts lawyers generally lack such experience. Thus, lead counsel from New Jersey was appointed. *See* Letter from Owen S. Walker, Federal Public Defender to Judge Mark L. Wolf (Oct. 30, 2001) (Docket No. 5). There are unique requirements for service as a juror in a capital case. *See Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). These requirements contributed to the necessity of a six-week process of jury selection. The jury, not the judge, had to determine Sampson's sentence pursuant to a statute that carefully guided the exercise of its discretion. *See* 18 U.S.C. §§ 3593–3594. Thus, a lengthy trial was required despite the fact that Sampson had pled guilty to the charges against him. In essence, all of these facts resulted from the law's recognition of the importance of giving priority to fairness, rather than convenience or efficiency, in federal capital cases.

For the reasons described earlier, the convenience for the government of executing Sampson in Indiana is trumped by the value of keeping litigation concerning him in the First Circuit to the maximum extent possible and the interest of making his execution as accessible as possible.

The court has made every effort to cause the first Federal Death Penalty Act case in Boston to be as accessible to the public as possible while protecting the parties' rights to a fair trial. *See, e.g., United States v. Sampson,* 297 F.Supp.2d 342 (D.Mass.2003) (releasing audio recordings to media during trial); *United States v. Sampson,* 297 F.Supp.2d 340 (D.Mass. 2003) (establishing procedures for voir dire of potential jurors). As a result, Sampson's trial has been visible to the victims' families and the many others who attended

it. Sampson's execution should, within reasonable limits, also be accessible to those most interested in it and impacted by it.

It has been said that "'death, like the sun, should not be stared at.'" Francois de la Rochefoucauld (as quoted in Robert A. Burt, *Death Is That Man Taking Names* 150 (2002)). However, in this matter that is not true. As a result of a public trial in Massachusetts a human being has been condemned to die. His execution should not be a secret ceremony in the remote Midwest. Rather, those who have been involved in Sampson's trial should have the opportunity, if not obligation, to witness what has been ordained.

Therefore, the court has decided that New Hampshire is the most appropriate venue for Sampson's execution because it is a state in the First Circuit, close to Massachusetts, which also has an independent interest in seeing Sampson punished.

■ In its proposed Judgment and Order, the government has asked this court to decide now many other issues relating to Sampson's execution. Among other things, the government requests that the court identify and limit who may see Sampson in his final days and observe his execution. The government also asks that the court prohibit the broadcast of Sampson's execution, and any photographic or other visual or audio recording of it. Sampson urges the court not to address these issues now.

Some of the provisions of the Judgment and Order that the government requests, including the proposed prohibition on broadcasting or filming executions, have been the subject of litigation in other cases. *See, e.g., Garrett v. Estelle,* 556 F.2d 1274 (5th Cir.1977); *Entertainment Network, Inc., supra; KQED, Inc. v. Vasquez,* No. C–90–1383 RHS, 1995 WL 489485 (N.D.Cal. Aug.1, 1991). The government's proposal that all video

broadcasting of Sampson's execution be prohibited, *see* Jan. 26, 2004 Tr. at 94, is inconsistent with the closed circuit broadcast of the execution of Timothy McVeigh for numerous survivors of the Oklahoma City bombing. *See* Matthew Pearl, "Dante and the Death Penalty: How Capital Punishment Fails its Audience," *Legal Aff.*, January/February 2003, at 3; *see also Garrett*, 556 F.2d at 1279 (press members allowed to witness execution on closed circuit telecast). Moreover, it may be argued that Sampson's execution should be recorded as potential evidence for foreseeable future cases alleging that lethal injection constitutes cruel and unusual punishment. *Cf. Sims v. State*, 754 So.2d 657, 668 n. 19 (Fla. 2000) (rejecting claim that lethal injection constituted cruel and unusual punishment in part because evidence offered was hearsay).

It is not now clear whether the provisions that the government asks be included in the Judgment and Order will be disputed or, if they are, what the evidence and arguments concerning those disputes will be. In essence, the issues presented by those proposed provisions are not now sufficiently definite or ripe for resolution. Therefore, the attached Judgment and Order does not address them.

Accordingly, it is hereby ORDERED that the attached Judgment and Order is ENTERED.

## JUDGMENT AND ORDER

Defendant Gary Lee Sampson was represented in the above-captioned case by David A. Ruhnke, Ruhnke & Barrett, 47 Park Street, Montclair, New Jersey; Robert L. Sheketoff, One McKinley Square, Boston, Massachusetts; and Stephanie Page, 44 Bromfield Street, Boston, Massachusetts.

On September 9, 2003, the Defendant pled guilty to Counts One and Two of the Second Superseding Indictment charging him with carjacking resulting in death. Under 18 U.S.C. § 2119(3) both of these offenses are punishable by death. The Defendant has therefore been adjudged guilty of the following capital offenses:

| Title & Section | Nature of Offense | Offense Date |
|---|---|---|
| | *Count I* | |
| 18 U.S.C. § 2119(3) | Carjacking resulting in the death of Philip McCloskey | July 24, 2001 |
| | *Count II* | |
| 18 U.S.C. § 2119(3) | Carjacking resulting in the death of Jonathan Rizzo | July 27, 2001 |

Pursuant to 18 U.S.C. §§ 3591–3597 and in accordance with the Special Findings and Jury Verdicts dated December 22, 2003 and December 23, 2003 and returned in open court on December 23, 2003, it is hereby ORDERED that:

1. The defendant, Gary Lee Sampson, is now sentenced to death on each of Counts One and Two.

2. The defendant shall pay to the United States a special assessment of $100 on each of Counts One and Two, which shall be due and payable immediately. *See* 18 U.S.C. § 3013(a)(2)(A).

3. The defendant is committed to the custody of the Attorney General until exhaustion of the procedures for appeal of

the judgment of conviction and for review of the sentence. *See* 18 U.S.C. § 3596(a).

4. When the sentence is to be implemented, the Attorney General shall release the defendant to the custody of a United States Marshal, who shall supervise implementation of the sentence in the State of New Hampshire, in the manner prescribed by the law of the State of New Hampshire. *See* 18 U.S.C. § 3596(a).

5. Once the sentence is implemented, the Marshal shall complete the attached Return and file it with the Clerk of the United States District Court for the District of Massachusetts.